(C. D. 1772)

F. L. Kraemer & Co.
General Motors Corp. Truck & Coach Div. } v. United States

United States Customs Court, Second Division

(Decided April 12, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiffs.
*Warren E. Burger,* Assistant Attorney General (*Richard H. Welsh* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: In this case, the facts are not in dispute. The parties have agreed that the merchandise represented by exhibit 1 consists of so-called channels, composed wholly of aluminum, produced by an extrusion process, and that they have been fabricated for use.

The collector of customs classified the merchandise in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, within the provision for articles or wares, not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of aluminum, and imposed duty thereon at the rate of 22½ per centum ad valorem.

Plaintiffs contend that the commodity should be classified in paragraph 312 of said act (19 U. S. C. § 1001, par. 312), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade,

86 Treas. Dec. 121, T. D. 52739, as channels, fabricated for use, and subject to duty at 7½ per centum ad valorem.

The material text of the competing statutes is here set forth:

Paragraph 397, as modified, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, \* \* \* aluminum, \* \* \*:

\*     \*     \*     \*     \*     \*     \*

Other \* \* \*_____22½% ad val.

Paragraph 312, as modified, *supra*—

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:

\*     \*     \*     \*     \*     \*     \*

Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____7½% ad val.

As the case is presented to us, the question for determination is whether the words "iron or steel" in paragraph 312, *supra*, qualify the words "all other structural shapes" only, or whether the words reach back and qualify all of the other items enumerated in the paragraph.

Plaintiffs, by their brief, contend that the provision for "channels" in said paragraph 312 is "an *eo nomine* statutory designation of an article without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation will include all forms of said article." Citing *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

Based upon the foregoing premise, plaintiffs then argue as follows: "Thus the aluminum channels at bar are dutiable under the *eo nomine* designation if that designation is without limitation (in the absence of (1)—proof of commercial designation and (2)—a shown contrary legislative intent, judicial or administrative practice)." Further, plaintiffs state: "There is no proof of a contrary commercial designation and our research has not disclosed anything to indicate a contrary legislative intent nor a contrary judicial decision or administrative practice."

Plaintiffs also invoke the familiar rule of legal construction that a qualifying clause modifies only its immediate antecedent where no contrary intention appears.

It is our considered opinion, however, that a contrary intention does appear, and a careful reading of the paragraph leads us to the conclusion that the words "iron or steel" qualify not only "other

structural shapes," but each of the exemplar items enumerated in the paragraph. The words "all other structural shapes" clearly imply that the items specifically enumerated in the paragraph are also structural shapes; and sound reason would dictate that, if "all other structural shapes" are limited to those composed of iron or steel, it would be illogical to hold that the other items in the paragraph may be made of any kind of metal, wood, or synthetics. For instance, upon the theory of plaintiffs, the paragraph would include beams, joists, and posts, if composed wholly of wood.

Our attention has not been drawn to any authority, case or otherwise, indicating a construction of the language of paragraph 312 which would support plaintiffs' theory. In other words, the congressional intent, as we see it, is adverse to the general principle that the qualifying phrase confines its influence to its immediate antecedent in the circumstances of this case.

Another argument advanced by plaintiffs, that the shapes which are specifically named are not limited by the words "iron or steel," flows from the fact that the appellate court has held that the rule of *ejusdem generis* does not apply in the determination of the scope of the paragraph.

However, we are not impressed by that argument, and it will be observed that our appellate court in the case of *United States* v. *The Winkler-Koch Engineering Co.*, 41 C. C. P. A. (Customs) 121, C. A. D. 540, stated (at page 134) with reference to the steel angles there involved:

* * * Conceding, without holding, that the casings here involved are not *ejusdem generis* with "beams, girders, joists, angles, channels, car-truck channels, tees, columns, and posts, or parts or sections of columns and posts, and deck and bulb beams," all of which are embraced within the term "structural shapes," we may not overlook the fact that Congress realized that there were and are "other structural shapes" *of iron and steel* and that it made provision for them. * * * [Italics supplied.]

It is noteworthy that earlier statutes in *pari materia* as far back as paragraph 137 of the Tariff Act of 1890 are substantially verbatim with the pertinent text of paragraph 312, with which we are here concerned. Moreover, as further support for the conclusion that the words "iron or steel" are not only applicable to the provision for "all other structural shapes" but also to the various precedent articles specifically enumerated in the paragraph, attention is directed to the comparable provision in the Tariff Act of 1883 which reads:

592. *Iron or steel* beams, girders, joists, angles, channels, car-truck channels, TT, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes *of iron or steel*, one and one-fourth of one cent per pound. [Italics supplied.]

It was doubtless to avoid a repetition of words and to simplify the language of the structural shapes provision that the applicable para-

graph in the tariff acts subsequent to the act of 1883 was not initiated with the words "iron or steel." However, it appears evident that the elimination of these words does not connote a change of meaning in the minds of the legislators from the fact that the phrase *"together with all other* structural shapes of iron or steel" has been retained in all the tariff acts from 1883 to the present day. [Italics supplied.]

Corroboration of this conclusion may be derived from the following considerations:

In the "Summary of Tariff Information—1920," prepared for use of the Committee on Ways and Means of the House of Representatives, the statement appears at page 185 under the heading "GENERAL INFORMATION" and subheading "Description and uses"—

*Structural shapes* are iron or steel rolled for structural purposes. They are classified into heavy and light—the latter being those with the leg or web less than 3 inches—and are given commercial names, e. g., I-beams, channels, joists, girders, angles, tees, and zees, names largely descriptive of their cross-section appearance. Nearly 90 per cent of the country's production are heavy structural shapes. They are used in buildings, bridges, ships, cars, etc. Light shapes are used in the manufacture of agricultural implements, bedsteads, fences, safes, automobiles, and other articles requiring light sections.

In the "Digest of Trade Data With Respect to Products On Which Concessions Were Granted by the United States In the United States—Belgo-Luxemburg Trade Agreement" (March 1935), at page 139, under the headings "United States Tariff Commission," "Fabricated Structural Shapes," "Description and Uses," appears the following—

Structural shapes usually are made of steel; less than one tenth of 1 percent are made of wrought iron. * * *

In "Tariff Information Surveys, Schedule C, Metals, and Manufactures of," prepared by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, containing information on the articles in paragraph 104 of the Tariff Act of 1913 and related articles in other paragraphs, there appears in volume 3, at page 7, the following under the subject headings "Structural Shapes," "Summary," "Description"—

The term structural shapes is applied to iron and steel forms which have been rolled for strictly structural purposes.

In *Kuyper & Co.* v. *United States*, 7 Ct. Cust. Appls. 212, T. D. 36509, the court was interpreting the provisions of paragraph 104 of the Tariff Act of 1913 which provided for—

Beams, girders, * * * channels, car-truck channels, * * * sashes, frames, and building forms, together with all other structural shapes of iron or steel, whether plain, punched, or fitted for use, or whether assembled or manufactured * * *.

The merchandise before the court was described as structural shapes, composed of steel and containing nickel as an alloy. It had been classified by the collector of customs in paragraph 110 of the Tariff Act of 1913 as pressed shapes, composed of steel and containing nickel as an alloy. In the course of its opinion, the court observed:

* * * Paragraph 104 does not provide for structural shapes of steel containing an alloy. Paragraph 110, on the other hand, in terms imposes a duty of 15 per cent ad valorem on all steels, by whatever process made, containing alloys such as nickel, cobalt, and so forth. That provision in paragraph 110 inclines us to the view that it was not the legislative purpose to include in paragraph 104 structural shapes of steel containing nickel alloy. If it were otherwise, the steel bar alloyed with nickel out of which the pressed structural shape is made would be subjected to a duty of 15 per cent, but once given by pressing the shape required it would carry a duty of only 10 per cent ad valorem. We can not favor an interpretation of paragraph 104 which would bring about such an anomaly as that, especially as the language of the provision is open to a construction which would give it an effect in accordance with the rules which usually obtain in the making of tariff laws.

Further, the court stated:

Congress evidently regarded all steels containing nickel, cobalt, or similar alloys as high-grade steels, and the exclusion from paragraph 104 of structural shapes of steel containing nickel brings that provision into harmony with that part of paragraph 110 which imposes on all steels alloyed with nickel, cobalt, and so forth, and by whatever process made, a duty of 15 per cent ad valorem.

Note also *Judson Freight Forwarding Co.* v. *United States*, 20 C. C. P. A. (Customs) 229, 236, T. D. 46038.

The language employed by the negotiators in the modification of paragraph 312, *supra*, is the same as that used in the basic Tariff Act of 1930 and, as pointed out above, has appeared in every tariff act over a period of more than 60 years. From a careful reading of the paragraphs, we are satisfied that it was not the intent of either Congress or the negotiators of the Torquay Protocol to the General Agreement on Tariffs and Trade to limit the words "iron or steel" exclusively to the provision for "all other structural shapes," but that all of the articles in the paragraph, including channels, must be composed of iron or steel in order to come within its purview.

Although, by amendment of their protest, plaintiffs invoke an alternative claim for classification of the merchandise in paragraph 374 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 374), as modified by the General Agreement on Tariffs and Trade, *supra*, as "aluminum, in bars or rods or strips," for which duty at the rate of 3 cents per pound is provided, this claim has not been pressed nor does the record in any way support the claim.

For the foregoing reasons, all claims of plaintiffs are overruled and judgment will be entered accordingly.